# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL NO. 5:09CV42-RLV-DSC

| | |
|---|---|
| LAURA A. MONEY, )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant. )<br>) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and and "Memorandum in Support ..." (document #14) filed September 21, 2009; and Defendant's "Motion for Judgment on the Pleadings" (document #17) and "Memorandum in Support of the Commissioner's Decision" (document #18), both filed December 7, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Judgment on the Pleadings be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On August 31, 2005, Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging she was unable to work as of July 24, 2004, due to fibromyalgia, post herpetic neuralgia, chronic fatigue, anxiety, and osteoarthritis. (Tr. 48-52).

Plaintiff's claims were denied initially and upon reconsideration.

Plaintiff filed a timely Request for Hearing, and on June 20, 2008 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated October 24, 2008, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and that Plaintiff suffered from bilateral knee osteoarthritis, lumbar degenerative disc disease, fibromyalgia, morbid obesity,[1] undifferentiated connective tissue disease, major depressive disorder, generalized anxiety disorder, obstructive sleep disorder, restless leg syndrome, and a dysthymic disorder, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that Plaintiff's subjective complaints and alleged resulting functional limitations were credible only to the extent that they restricted her Residual Functional Capacity ("RFC").[2]

The ALJ then found that Plaintiff retained the RFC to perform unskilled work at the light[3] exertional level not requiring more than occasional climbing stairs, balancing, stooping/bending,

---

[1] In her brief, Plaintiff states that she is five-feet four inches tall and that her weight has fluctuated "between 264 pounds to well over 300 pounds." Plaintiff's "Memorandum in Support ..." at 4 (document #14). On one occasion, Plaintiff reported to her doctor that she weighed "299 pounds, down from 364 pounds." Id.

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

kneeling, crouching/squatting, or crawling and never requiring climbing ropes or ladders. The ALJ also found that Plaintiff could not perform work requiring frequent handling and fingering or concentrated exposure to wetness, humidity, or workplace hazards.

With regard to her mental and emotional impairments, the ALJ found that Plaintiff could perform work only at a low stress, non-production rate. The ALJ further excluded from Plaintiff's RFC jobs requiring complex decision making, frequent changes in work setting or assignment, dealing with crisis, more than occasional face-to-face contact with the general public, frequent contact with co-workers/supervisors, supervision of others, travel, and use of public transportation other than commuting to and from work. (Tr. 19). Based upon the above RFC, the ALJ found that Plaintiff could not perform her past relevant work as a rehabilitation technician in a group home or as a substitute teacher, which were skilled jobs.

The ALJ then correctly shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could perform. The ALJ concluded that the Vocational Expert's ("VE") testimony, which was based on a hypothetical that factored in the above limitations, provided substantial evidence that although Plaintiff could not return to her past relevant work, there were a significant number of jobs in the national economy that she could perform, including inspector (2,500 jobs in North Carolina) and folder (400 jobs in North Carolina). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 28).

By notice dated February 27, 2009, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on April 23, 2009. On appeal, Plaintiff contends that her osteoarthritis and depression, taken in combination with her obesity, were the medical equivalent of

Listings 1.02 (major dysfunction of a joint) and 12.04 (affective disorder). See Plaintiff's "Memorandum in Support ..." at 8-13 (document #14). Plaintiff also challenges the ALJ's determination of her RFC, arguing that the ALJ impermissibly conducted a "sit and squirm" test during the hearing and failed to properly evaluate the opinions of Plaintiff's treating physicians and a state evaluating physician. Id at 13-22. The parties' cross dispositive motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[4]  With regard to Plaintiff's first assignment of error, she contends that her bilateral knee osteoarthritis, in conjunction with her obesity, meets or medically equals the criteria of Listing 1.02, Major Dysfunction of a Joint(s) (due to any cause). The record, however, contains substantial evidence supporting the ALJ's conclusion that Plaintiff did not meet this or any other Listing.

Listing 1.02, Major Dysfunction of a Joint(s) (due to any cause), is:

Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which has lasted or can
be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joints (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. As the ALJ noted, Plaintiff was diagnosed with osteoarthritis in both knees, and x-rays of the knees showed osteoarthritis with medial joint space narrowing. (Tr. 17, 107, 110, 221, 223, 225, 227, 229, 231, 233, 237). Plaintiff complained of pain in her knees and reported generally feeling stiff for thirty minutes in the morning, but there is no evidence of limitation of motion or other abnormal motion of the knees. (Tr. 222, 225, 283-288). To the contrary, Plaintiff's treating rheumatologist, Dr. Elliott Semble, consistently noted on examination that inspection and palpation of joints revealed no signs of joint inflammation. There was no joint instability or deformity, and all joints tested yielded functional ranges of motion. (Tr. 281-288). The absence of any limitation of motion or abnormal motion of the knees precludes Plaintiff from satisfying all of the requirements in the initial paragraph of Listing 1.02.

Similarly, Plaintiff cannot show that her knee impairment meets or equals the requirements of Listing 1.02, subsection A, which requires an inability to ambulate effectively. The regulations define an inability to ambulate effectively as "having insufficient lower extremity functioning ... to permit independent ambulation without the use of hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). The regulations further explain that examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; and the inability to carry out routine

ambulatory activities, such as shopping and banking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).

Plaintiff cites treatment notes from Dr. Semble and Dr. Emidio Novembre, who treated Plaintiff at a pain clinic, to support her claim that she is unable to ambulate effectively. A review of these notes shows that Drs. Semble and Novembre did not observe that Plaintiff had difficulty ambulating. Rather, Drs. Semble and Novembre merely noted Plaintiff's reports that she was restricted in her physical activities and that she experienced pain with standing and walking. (Tr. 221-238, 281-287). In fact, as Defendant argues in his brief, their examination findings undermine Plaintiff's claim. As the ALJ remarked, Plaintiff's gait and station were repeatedly rated as within normal limits, and Plaintiff consistently reported improvement in function and pain relief with medication. (Tr. 24, 221-238, 281-288). Treatment records from Plaintiff's treating psychiatrist, Dr. Mark Chinn, also show that Plaintiff exhibited a normal gait, and she was able to walk around her podiatrist's office without difficulty when she was given a temporary orthotic and heel lift. (Tr. 123, 210).

Plaintiff cites her testimony and that of her husband that she walks with a cane as evidence of her inability to ambulate effectively, but the ALJ correctly noted that there was no documentation of her using a cane anywhere in the record. (Tr. 24). No treating or examining physician prescribed a cane or noted that Plaintiff used a cane. Moreover, the record shows that Plaintiff's gait and station were observed to be within normal limits at a time when she weighed 283 pounds. (Tr. 221, 287). In short, substantial evidence supports the ALJ's determination that even accounting for Plaintiff's obesity and subjective complaints, Plaintiff's knee impairments did not meet or equal the requirements of Listing 1.02.

7

Plaintiff also asserts that her depressive disorder meets or equals the requirements of Listing 12.04, Affective Disorders. However, she offers no citation to the medical evidence of record and relies largely on her subjective hearing testimony. A review of the record illustrates that substantial evidence supports the ALJ's determination that Plaintiff's depressive disorder does not meet or equal the criteria of Listing 12.04.

Subsection A of Listing 12.04 requires:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>   a. Anhedonia or pervasive loss of interest in almost all activities; or
>   b. Appetite disturbance with change in weight; or
>   c. Sleep disturbance;
>   d. Psychomotor agitation or retardation; or
>   e. Decreased energy; or
>   f. Feelings of guilt or worthlessness; or
>   g. Difficulty concentrating or thinking; or
>   h. Thoughts of suicide; or
>   I. Hallucinations, delusions, or paranoid thinking.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A). Although Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, the existence and persistence of at least four of these listed symptoms is not medically documented in the record. (Tr. 198). Plaintiff states that she has "completely lost interest in most activities," but, as the ALJ remarked, Plaintiff informed consultative psychologist Harry Padgett, Ed.D., that she watches soap operas, listens to music, and moves a little for exercise. (Tr. 17, 113). She runs errands with her husband in the afternoons, shops, and visits with her son every three weeks. (Tr. 17, 113). In fact, Plaintiff informed Dr. Chinn that she "continues to have things which she enjoys doing." (Tr. 197). Plaintiff asserts that she has

8

experienced appetite disturbance with fluctuations in her weight as a symptom of her depression, but medical records reveal that Plaintiff intentionally lost weight with diet, exercise, and weight loss supplements. (Tr. 186, 191, 196). Plaintiff next contends that she is unable to obtain restful sleep as a result of her depression, but treatment notes show that Plaintiff reported improved sleep with medication. Dr. Chinn remarked that Plaintiff was sleeping "reasonably well." (Tr. 186, 189, 194). She states that she has difficulty concentrating and thinking, but the ALJ correctly observed that Plaintiff was able to concentrate to watch television programs. Upon examination by Dr. Padgett, despite a low motivation level, Plaintiff's thought process was coherent and her immediate memory was very functional. Her delayed memory was weak. (Tr. 18, 113-114). Dr. Chinn repeatedly found Plaintiff was alert and oriented and her thought processes were logical and goal oriented. (Tr. 18, 184, 186). Dr. Chinn found Plaintiff's concentration and recent and remote memory were intact and that Plaintiff had a good fund of knowledge. (Tr. 18, 198). As to Plaintiff's claim of suicidal ideation, Dr. Chinn's treatment notes reveal that Plaintiff consistently denied any suicidal ideation. (Tr. 184-186, 189, 194, 196, 198). As the requisite symptoms are not medically documented in the record, Plaintiff has failed to show that her depressive disorder meets Listing 12.04.

In addition to the criteria in subsection A, Plaintiff must also show that she meets the criteria in subsection B of Listing 12.04. Subsection B requires that the depressive disorder result in at least two (2) of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). Plaintiff asserts that the assignment of Global

Assessment of Functioning ("GAF") scores of 45 and 50 by one-time consultative examiner Dr. Padgett and her treating psychiatrist Dr. Chinn, respectively, equates to a finding that she has marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; and, marked difficulties in maintaining concentration, persistence, or pace. (Pl.'s Br. at 12). While GAF scores of 45 and 50 indicate "serious symptoms" according to the Diagnostic and Statistical Manual of Mental Disorders, they do not support the conclusion that a person with a GAF in this range is unable to meet the basic mental demands of competitive, remunerative, unskilled work. See Seymore v. Apfel, 131 F.3d 152, No. 97-5068, 1997 WL 755386, at *1-2 (10th Cir. Dec. 8, 1997) (noting that a GAF of 45, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work"). The GAF scale simply does not have a direct correlation to the severity requirements utilized in the Social Security disability program. See Comments to Revised Medical Criteria for Evaluating Mental Disorders at 65 F.R. 50746, 50764-50765 (August 21, 2000). Furthermore, GAF ratings do not correspond with the Commissioner's listings and are of limited relevance since they only relate to functioning at the time of evaluation. The Commissioner's analysis under step three concerns whether the required marked degrees of limitation have lasted or are expected to last continuously for twelve months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). Plaintiff's GAF scores of 45 and 50, assigned in October 2005 and February 2006, do not evidence that Plaintiff's depressive disorder resulted in marked degrees of limitation continuously for twelve months. (Tr. 117, 198).

The medical evidence similarly undermines Plaintiff's claim that she experienced marked degrees of limitation. For instance, Plaintiff informed her mental health counselor that she was trying to get out more often and was trying to think positive. (Tr. 120). Treating psychiatrist Dr.

Chinn consistently noted that Plaintiff was alert, cooperative, and well-groomed, and further observed that Plaintiff's concentration and recent and remote memory were intact. (Tr. 184-186, 189, 194, 196, 198). Dr. Chinn also recorded Plaintiff's own report in May 2006, 3 months after being assigned a GAF score of 50, that she was functioning well on a daily basis. (Tr. 189). Accordingly, substantial evidence also supported the ALJ's conclusion that Plaintiff could not meet the requirements of subsection B of Listing 12.04.

In her second assignment of error, Plaintiff argues that the ALJ erred when she considered her observations of Plaintiff at the hearing in assessing Plaintiff's credibility, which Plaintiff characterizes as a "sit and squirm test." Plaintiff's argument to the contrary notwithstanding, the Fourth Circuit has held that the ALJ is responsible for and is accorded deference in making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Moreover, "[b]ecause [s]he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984).

In this case, the ALJ noted Plaintiff's testimony that she could only sit for fifteen (15) to twenty (20) minutes, and remarked that there was no evidence to substantiate her claim. (Tr. 24). The ALJ went on to observe that Plaintiff was able to sit through the administrative hearing, which lasted approximately 1 hour. Id. The ALJ's observation of Plaintiff at the hearing directly contradicts Plaintiff's allegation. As the ALJ is permitted to rely on her observations of Plaintiff in assessing Plaintiff's credibility, no error exists on this ground.[5]

---

[5] Although Plaintiff does not challenge any other aspect of the ALJ's credibility assessment, the undersigned notes that the ALJ's observations at the hearing served as only part of her evaluation of Plaintiff's credibility. The ALJ specifically discussed the medical evidence that undermines Plaintiff's subjective claims. (Tr. 23-24). She

Plaintiff next assigns error to the ALJ's treatment of the opinions of her examining and treating physicians. Concerning the latter, the Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

As Defendant concedes, Drs. Semble, Novembre, and Chinn examined and treated Plaintiff on several occasions and are therefore treating sources. However, the statements that Plaintiff cites as medical source opinions do not constitute medical opinions and are not entitled to any specific evidentiary weight. For instance, Plaintiff asserts that the ALJ should have considered the statements by her treating rheumatologist, Dr. Semble, that she was "severely restricted in physical and social activities" due to generalized weakness and pain, and that she was "unable to work in any capacity at this time." (Pl.'s Br. at 15; Tr. 281-284). A review of Dr. Semble's notes, however, reveals that

---

noted that treatment with medications improved symptoms associated with Plaintiff's physical and mental impairments, and that Plaintiff did not report any side effects. (Tr. 23). She explained that Plaintiff's sleep apnea was treated with a CPAP machine, which was helpful as long as Plaintiff did not remove the mask. (Tr. 23). The ALJ observed that Plaintiff did not seek or receive physical therapy, injections, or other treatment modalities for her pain. (Tr. 24). The ALJ recounted Plaintiff's reported functional limitations as well as her reported limited activities of daily living, and cited treatment records that did not reflect any functional limitations and classified Plaintiff as independent in activities of daily living. (Tr. 23-24). The ALJ, then, appropriately analyzed Plaintiff's subjective complaints in accordance with regulation and Agency policy. 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-7p.

these statements were not made by Dr. Semble. Rather, these statements constitute Dr. Semble's memorializations of Plaintiff's social history, as reported to him by Plaintiff. (Tr. 281-284). Dr. Semble's recording of Plaintiff's reports are not medical source opinions entitled to controlling weight. Importantly, Dr. Semble also noted that Plaintiff remained independent in her activities of daily living. (Tr. 281-285).

Plaintiff notes that Dr. Novembre diagnosed degenerative disc disease, bilateral knee osteoarthritis, fibromyalgia, muscle pain, and fatigue, while x-rays showed severe facet arthropathy at L2-L3 through S1-S2 and moderate narrowing of the L5-S1 and S1-S2 disc spaces. These bare diagnoses and medical findings are not opinions as to the nature and severity of Plaintiff's impairments. Indeed, the mere fact that Plaintiff was diagnosed with certain impairments is insufficient to prove disability and says nothing about the severity of the impairments. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). Further, Dr. Novembre consistently noted mild to moderate improvement in Plaintiff's conditions, including her degenerative disc disease, bilateral knee osteoarthritis, and fibromyalgia. (Tr. 221, 223, 225, 227, 229, 231, 233, 235, 237). Plaintiff also references Dr. Novembre's prescriptions for pain medication, but Plaintiff fails to acknowledge her reports of pain relief with medication. (Tr. 221, 223, 225, 227, 229, 231, 233, 235, 237).

Similarly with regard to her mental impairments, Plaintiff appears to argue that her diagnoses of depression and anxiety by her treating psychiatrist, Dr. Chinn, are medical opinions entitled to evidentiary weight. As discussed above, the diagnosis of an impairment says nothing about its severity. Higgs, 880 F.2d at 863. Plaintiff points to her GAF score of 50 as evidence that Dr. Chinn believed her mental impairments were disabling. This score was assigned by Dr. Chinn at Plaintiff's

first two visits in February and March 2006. It does not equate to an opinion as to the nature and severity of Plaintiff's impairments over a twelve month period. The GAF score is intended to be used to make treatment decisions and may have little to no bearing on Plaintiff's occupational functioning. See Kornecky v. Commissioner of SSA, 167 F. App'x 496, 511 (6th Cir. 2006); Lopez v. Barnhart, 78 F. App'x 675, 678 (10th Cir. 2003); Wilkins v. Barnhart, 69 F. App'x 775, 780 (7th Cir. 2003). A GAF score, standing alone, is not evidence that an impairment seriously interferes with Plaintiff's ability to work. Lopez, 78 F. App'x at 678. The GAF scale simply does not have a direct correlation to the severity requirements utilized in the Social Security disability program. See Comments to Revised Medical Criteria for Evaluating Mental Disorders at 65 F.R. 50746, 50764-50765 (August 21, 2000).

Although Plaintiff's GAF score in early 2006 is not a medical opinion as to the nature and severity of Plaintiff's impairment, the ALJ considered this evidence in her decision. The ALJ specifically noted that Dr. Chinn had assigned this score, which corresponds to "serious impairment" in social or occupational functioning during February and March 2006. The ALJ went on to note Plaintiff's subsequent reports to medical providers that her depression was well-controlled as long as things were well with her son and family. (Tr. 22, 194). Plaintiff stated that she could function well on a daily basis, her anti-anxiety medication was beneficial, and she consistently presented as alert, cooperative, and well-groomed. (Tr. 22-23, 123, 184-186, 189). Plaintiff reported that she did not have difficulty conforming to social standards and complying with rules and regulations, and stated that she was able to cooperate with authority figures. (Tr. 112). The ALJ further observed that Plaintiff was fully oriented, and her concentration and recent and remote memory were intact. (Tr. 26, 198). Although Plaintiff insists that the ALJ could not rely on this evidence to reject Dr.

14

Chinn's GAF score, this evidence squarely addresses Plaintiff's abilities to function in social and occupational settings. It does not support Dr. Chinn's assessment that Plaintiff had a "serious impairment" in social or occupational functioning.

Finally, with the exception of advising her not to drive or operate heavy machinery while taking her medication, Dr. Semble, Dr. Novembre, and Dr. Chinn never imposed any functional restrictions on Plaintiff as a result of her physical or mental impairments. (Tr. 184-186, 189, 194, 196-198, 221-238, 281-288). Similarly, none of these physicians opined that Plaintiff's impairments precluded her from working.

Plaintiff also argues that the ALJ committed reversible error because she failed to give substantial weight to the opinion of Dr. Padgett, a consultative examining psychologist. Unlike the diagnoses and medical data from Drs. Semble, Novembre, and Chinn, Dr. Padgett's report does contain an opinion as to the nature and severity of Plaintiff's mental impairments, and this opinion must be evaluated by the ALJ. Contrary to Plaintiff's contention however, the ALJ properly declined to afford it substantial weight. (Tr. 26).

Based on a one-time consultative examination of Plaintiff, Dr. Padgett stated that he doubted whether Plaintiff would be able to sustain attention to perform repetitive and routine tasks because of her preoccupation with pain. He also doubted whether Plaintiff could deal effectively with the stress and pressure of daily work activity. (Tr. 117). The ALJ referenced Dr. Padgett's statements and decided that they were not entitled to substantial weight. (Tr. 26). As the ALJ reasoned, Dr. Padgett was a consulting psychologist who examined Plaintiff on only one occasion. (Tr. 26). At the time of Dr. Padgett's evaluation, Plaintiff had not yet sought psychiatric treatment. The ALJ explained that the subsequent treatment records from Plaintiff's treating psychiatrist were

15

inconsistent with Dr. Padgett's opinions. (Tr. 26). For instance, the ALJ noted that Plaintiff reported improvement in her psychiatric symptoms with the use of medication. (Tr. 26, 184, 189, 194). On mental status examination, Plaintiff was alert, cooperative, and fully oriented, and her concentration and recent and remote memory were intact. (Tr. 26, 123, 184-186, 189, 198). The ALJ further noted that Plaintiff's treating psychiatrist, who had treated Plaintiff over a significant period of time, had not opined that Plaintiff was disabled or unable to perform at least simple, routine, repetitive tasks. (Tr. 26). In short, the ALJ complied with 20 C.F.R. section 404.1527(d) when she considered the limited nature and extent of the treatment relationship between Plaintiff and Dr. Padgett, the examining relationship, and the inconsistency of Dr. Padgett's opinion with the record as a whole when she determined that Dr. Padgett's statements were not entitled to substantial weight. (Tr. 26-27).

Plaintiff's final assignment of error is a general challenge to the ALJ's formulation of her RFC. To support this argument, Plaintiff relies on the medical evidence and hearing testimony discussed above. For the same reasons that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet Listings 1.02 or 12.04, her evaluation of Plaintiff's credibility, and her treatment of the alleged opinions of her treating and examining physicians, the evidence also supports the ALJ's determination of Plaintiff's RFC.

Although the medical records establish that Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether

a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, formulation of her RFC, and ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED**; that Defendant's "Motion for Judgment on the Pleadings" (document #17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: December 8, 2009

David S. Cayer
United States Magistrate Judge